Filed 4/14/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B247311 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA397934) |
| v. | |
| SALVATORE CHILELLI, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Terry A. Bork, Judge.  Affirmed as modified with directions.

Marilee Marshall & Associates and Christine M. Aros, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II, Viet H. Nguyen and Marc A. Kohm, Deputy Attorneys General, for Plaintiff and Respondent.

# I.  INTRODUCTION

Defendant, Salvatore Chilelli, pled no contest to stalking in violation of Penal Code section 646.9, subdivision (b).**1**  As charged in the felony complaint, defendant's stalking-related activity was a single offense consisting of a continuing course of conduct.  According to the felony complaint, defendant stalked the victim between July 23, 2009, through May 18, 2012.  This time period, July 23, 2009, through May 18, 2012, straddled three changes in the law governing the rate at which presentence conduct credits accrue.  The presentence conduct credit computation method on May 18, 2012, was slightly less favorable than during one of the three accrual rates in effect during defendant's continuous course of conduct.  At our request, the parties have briefed the question of whether the slightly less favorable accrual rate can apply to defendant without violating federal and state ex post facto provisions.  We conclude there is no ex post facto violation because of the continuing nature of defendant's criminal conduct.  We modify defendant's presentence custody credit.  We affirm the judgment in all other respects.

# II.  DISCUSSION

## A.  Defendant Committed A Continuing Offense

In order to resolve the ex post facto question, we must initially determine whether defendant committed a continuous offense which straddles the applicable presentence conduct accrual rate.  Our Supreme Court discussed the concept of a continuing offense in *Wright v. Superior Court* (1997) 15 Cal.4th  521, 525-526 (*Wright*).  In *Wright,* the defendant was a registered sex offender who was convicted of failing to notify law enforcement officials of a change of address.  Our Supreme Court explained:  "Most crimes are instantaneous since they are committed as soon as every element is satisfied.

---

**1**     Further statutory references are to the Penal Code.

2

Some crimes, however, are not terminated by a single act or circumstance but are committed as long as the proscribed conduct continues. Each day brings 'a renewal of the original crime or the repeated commission of new offenses.' (*Toussie v. United States* (1970) 397 U.S. 112, 119 (*Toussie*).) The distinction is critical because it determines the application of many legal principles such as the statute of limitations period, venue, jurisdiction, sentencing, double jeopardy, and, as here, the prohibition against ex post facto laws. [¶] The concept of a continuing offense is well established. For present purposes, it may be formulated in the following terms: 'Ordinarily, a continuing offense is marked by a continuing duty in the defendant to do an act which he fails to do. The offense continues as long as the duty persists, and there is a failure to perform the duty.' (*Duncan v. State* ([Md.] 1978) [384 A.2d 456, 459]; *John v. State* [(Wis. 1980) 291 N.W.2d 502,] 505.) Thus, when the law imposes an affirmative obligation to act, the violation is *complete* at the first instance the elements are met. It is nevertheless not *completed* as long as the obligation remains unfulfilled. 'The crime achieves no finality until such time.' (*United States v. Cores* (1958) 356 U.S. 405, 409; see *State v. Morse* (1969) [252 A.2d 723, 725] . . . ; see also *Williams v. Superior Court* [(1978)] 81 Cal.App.3d [330,] 343-344.)" (*Wright v. Superior Court*, *supra*, 15 Cal.4th at pp. 525-526, fn. omitted.) A continuous course of conduct crime is not completed by a discrete act; the continuous course of conduct is complete when the last criminal act is performed. (*People v. Grant* (1999) 20 Cal.4th 150, 158-159; *People v. Palacios* (1997) 56 Cal.App.4th 252, 257.)

Whether a particular violation of law constitutes a continuous crime is primarily a question of statutory interpretation. (*Toussie, supra,* 397 U.S. at p. 115; *Wright, supra,* 15 Cal.4th at p. 526.) In *Wright*, our Supreme Court considered whether the 1974 version of former section 290, subdivision (f), which required a sex offender to register with the authorities, was a continuing offense. Our Supreme Court explained how, for ex post facto purposes, a statute should be evaluated in terms of whether it was a continuing offense: "The answer, however, does not depend solely on the express language of the statute. Equally important is whether 'the nature of the crime involved is such that [the

3

Legislature] must assuredly have intended that it be treated as a continuing one.' (*Toussie*, *supra*, at p. 115; see *United States v. Cores*, *supra*, 356 U.S. at pp. 409-410].) Accordingly, we must consider both the text of section 290(f) and its statutory context." (*Wright*, *supra*, 15 Cal.4th at p. 526.)

Our Supreme Court discussed the rules governing statutory construction in *People v. Lopez* (2003) 31 Cal.4th 1051, 1056: "In construing a statute, our role is to ascertain the Legislature's intent so as to effectuate the purpose of the law. (*People v. Gardeley* (1996) 14 Cal.4th 605, 621.) In determining intent, we must look first to the words of the statute because they are the most reliable indicator of legislative intent. (*People v. Lawrence* (2000) 24 Cal.4th 219, 230.) If the statutory language is clear and unambiguous, the plain meaning of the statute governs. (*Id.* at pp. 230-231.)" In *People v. Brookfield* (2009) 47 Cal.4th 583, 592, our Supreme Court further explained: "'We do not, however, consider the statutory language "in isolation." [Citation.] Rather, we look to "the entire substance of the statute . . . to determine the scope and purpose of the provision . . . . [Citation.]" [Citation.] That is, we construe the words in question "'in context, keeping in mind the nature and obvious purpose of the statute . . . .'"'" (*People v. Murphy* (2001) 25 Cal.4th 136, 142.)"

Here, defendant was convicted of stalking. The Legislature has defined stalking as a crime requiring a continuous course of conduct. (See *People v. Ibarra* (2007) 156 Cal.App.4th 1174, 1198; *People v. Jantz* (2006) 137 Cal.App.4th 1283, 1292-1293; *People v. Zavala* (2005) 130 Cal.App.4th 758, 769; *People v. Kelley* (1997) 52 Cal.App.4th 568, 576, fn. 5.) Section 646.9, subdivision (a) states, "Any person who willfully, maliciously, and *repeatedly* follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking . . . ." (Italics added.) Section 646.9, subdivision (e) defines "harasses," "For the purposes of this section, 'harasses' means engages in a knowing and willful *course of conduct* directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person, and that serves no legitimate purpose." (Italics added.)

4

Section 646.9, subdivision (f) defines "course of conduct:" "For the purposes of this section, 'course of conduct' means two or more acts occurring *over a period of time*, however, short, evidencing *a continuity of purpose*. Constitutionally protected activity is not included within the meaning of 'course of conduct.'" (§ 646.9, subd. (f), italics added.) The clear and unambiguous language of section 646.9 defines stalking as a continuous course of conduct crime. (Accord *People v. Grant, supra,* 20 Cal.4th at p. 155 [section 288.5 prohibits continuous sexual abuse of a child, a continuous course of conduct]; see *In re E.J.* (2010) 47 Cal.4th 1258, 1273.)

Here, defendant pled no contest to stalking the victim between July 23, 2009, and May 18, 2012. In calculating custody and conduct credits, as with other sentencing decisions, the trial court could consider, and impliedly did evaluate, all of the information before it relative to the crime. (*Williams v. Oklahoma* (1959) 358 U.S. 576, 584; *People v. Arbuckle* (1978) 22 Cal.3d 749, 754; *People v. Lamb* (1999) 76 Cal.App.4th 664, 683.) Substantial evidence in the record as a whole established a continuing course of conduct that straddled various presentence conduct credit accrual rates. We have evaluated: probation officers' reports; defendant's January 23, 2013, probation violation hearing transcript; and law enforcement investigation reports. That evidence demonstrates: defendant began stalking the victim in July 2008; the victim first obtained a restraining order and began documenting defendant's acts in 2009; defendant continued to stalk the victim relentlessly through May 18, 2012; and defendant was arrested on June 28, 2012.

B. The Duration Of Defendant's Stalking Straddled Amendments To The Criminal Conduct Credit Accrual Rate

While defendant was engaged in stalking the victim, the Legislature changed the presentence conduct credit accrual rate three times. First, when defendant first began stalking the victim, on July 23, 2009, section 4019 granted conduct credit at the rate of two days for every four days in presentence custody. (*People v. Garcia* (2012) 209

5

Cal.App.4th 530, 534; former § 4019, subds. (b), (c); Stats. 1982, ch. 1234, § 7, pp. 4553-4554.)

Second, effective January 25, 2010, the Legislature increased the rate at which conduct credit was earned to two days for every two days in presentence custody. (*People v. Garcia, supra,* 209 Cal.App.4th at pp. 535-536, former § 4019, subds. (b)(1), (c)(1); Stats. 2009, 3rd Ex. Sess. 2009-2010, ch. 28, § 50.) Under former section 4019, subdivisions (b)(2) and (c)(2), as amended by Statutes 2009, chapter 28, section 50, the increased rate did not apply to a defendant: required to register as a sex offender; who committed a violent or serious felony; or who had previously sustained a serious or violent felony conviction. Defendant does not fall within any of the foregoing excluded categories.

Third, effective as to crimes committed on or after September 28, 2010, the Legislature once again increased the potential rate of conduct credit accrual. Defendants in presentence custody who were ultimately sentenced to state prison earned one day of conduct credit for every one day in presentence custody. (*People v. Garcia, supra,* 209 Cal.App.4th at pp. 534-535, former § 2933, subd. (e)(1), as amended by Stats. 2010, ch. 426, § 1.) Under former section 2933, subdivision (e), as amended by Statutes 2010, chapter 426, section 1, the increased rate did not apply to a defendant: required to register as a sex offender; sentenced for a serious felony; or who had previously sustained a serious or violent felony conviction. Again, defendant did not fall within any of the excluded categories.

Fourth, section 4019 now provides that presentence conduct credits accrue at a rate of two days for every two days in presentence custody. (*People v. Garcia*, *supra*, 209 Cal.App.4th at p. 540; Stats. 2011, 1st Ex. Sess. 2011-2012, ch. 12, § 35.) The current provisions of section 4019, subdivision (h) state: "The changes to this section enacted by the act that added this subdivision shall apply prospectively and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp for a crime committed on or after October 1, 2011. Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by the prior law."

6

The current accrual rate applies to defendant because he committed his last act of stalking on May 18, 2012, a date after October 1, 2011. The current accrual calculation method can be slightly less favorable than prior rates. Under one prior rate, defendant could have received an odd number of days of presentence conduct custody credits. But under the two days for every two days rate of accrual, there can be only an even number of presentence conduct credits. This is because conduct credits are given in two day increments and no rounding up is permitted. (*People v. Dieck* (2009) 46 Cal.4th 934, 943; *People v. Smith* (1989) 211 Cal.App.3d 523, 527.) Thus, under the so-called one-for-one credits regime, an accused serving 25 days receives 25 days of presentence conduct credits. But under a two-for-two accrual method (the current system), an accused serving 25 days in custody can only receive 24 days of presentence conduct credit.

Thus, the issue before us is whether defendant is entitled to an additional day of presentence conduct credit under the ex post facto clauses. This is because some proscribed conduct, stalking, occurred when so-called one for one credits were available. (*People v. Garcia*, *supra*, 209 Cal.App.4th at pp. 534-535; Stats. 2010, ch. 426, § 1.) The answer to this ex post facto question depends on decisional authority discussing straddling offenses.

## C. Application Of A Newly Amended Law To A Straddle Offense Does Not Violate Ex Post Facto Prohibitions

The federal Constitution prohibits ex post facto laws (U.S. Const., art. I, § 10),[2] as does the California Constitution (Cal. Const., art. I, § 9).[3] The United States Supreme

---

[2] Article I, section 10, clause 1 of the United States Constitution states, "No state shall . . . pass any bill of attainder, *ex post facto law,* or law impairing the obligation of contracts, or grant any title of nobility." (Italics added.)

Court expressed the principles underlying the federal ex post facto clause in *Beazell v. Ohio* (1925) 269 U.S. 167, 169-170: "It is settled . . . that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with [a] crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto." The California Supreme Court discussed the purpose of the ex post facto doctrine in *People v. Grant, supra,* 20 Cal.4th at page 158: "The prohibition against ex post facto laws seeks to achieve two important goals. First, it assures 'that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed.' (*Weaver v. Graham* (1981) 450 U.S. 24, 28-29.) Second, the rule 'restricts governmental power by restraining arbitrary and potentially vindictive legislation.' (*Id.* at p. 29.) Thus, the ex post facto clauses of the state and federal Constitutions are 'aimed a laws that "retroactively alter the definition of crimes or increase punishment for criminal acts."' (*California Depart. of Corrections v. Morales* (1995) 514 U.S. 499, 504, quoting *Collins v. Youngblood* (1990) 497 U.S. 37, 43.)" (Accord, *In re Vicks* (2013) 56 Cal.4th 274, 287.)

Application of a newly enacted or amended law to an offense that straddles the law's or amendment's effective date does not violate the ex post facto clause of the United States Constitution. The federal circuit courts agree application of a newly amended law to a "straddle offense" does not violate the federal Constitution's prohibition against ex post facto laws. (*United States v. Munoz-Franco* (1st Cir. 2007) 487 F.3d 25, 55; *U.S. v. Giry* (1st Cir. 1987) 818 F.2d 120, 135; *United States v. Kumar* (2d Cir. 2010) 617 F.3d 612, 628; *U.S. v. Monaco* (2d Cir. 1999) 194 F.3d 381, 386-387; *U.S. v. McCall* (2d Cir. 1990) 915 F.2d 811, 816; *United States v. Brennan* (3d Cir. 2003) 326 F.3d 176, 198-199; *United States v. Goldberger* (3d Cir. 1952) 197 F.2d 330, 331; *United States v. Wechsler* (4th Cir. 1968) 392 F.2d 344, 346-347; *Huff v. United States*

---

**3**      Article I, section 9 of the California Constitution provides, "A bill of attainder, *ex post facto law,* or law impairing the obligation of contracts may not be passed." (Italics added.)

(5th Cir. 1951) 192 F.2d 911, 915; *U.S. v. Henson* (6th Cir. 1988) 848 F.2d 1374, 1385; *U.S. v. Kramer* (7th Cir. 1992) 955 F.2d 479, 484-485; *U.S. v. Tharp* (8th Cir. 1990) 892 F.2d 691, 693; *United States v. Campanale* (9th Cir. 1975) 518 F.2d 352, 355; *U.S. v. Stanberry* (10th Cir. 1992) 963 F.2d 1323, 1327; *U.S. v. Terzado-Madruga* (11th Cir. 1990) 897 F.2d 1099, 1124; *U.S. v. Thomas* (D.C. Cir. 1997) 114 F.3d 228, 271.) The ex post facto clause of the California Constitution is analyzed in the same manner as the federal clause. (*In re Vicks, supra,* 56 Cal.4th at p. 287; *People v. Alford* (2007) 42 Cal.4th 749, 755.) Application of a newly enacted or amended law to a straddle offense also does not violate the ex post facto clause of the California Constitution. (*People v. Grant, supra,* 20 Cal.4th at pp. 158-162; *Wright v. Superior Court, supra,* 15 Cal.4th at pp. 525, 528; *People v. Williams* (2004) 118 Cal.App.4th 735, 745-749; *People v. Palacios, supra,* 56 Cal.App.4th at p. 257; *People v. Toplitzky* (1996) 43 Cal.App.4th 491, 493.)

In *People v. Grant, supra,* 20 Cal.4th at page 162, the defendant was convicted of continuous sexual abuse of a child under section 288.5. The offending acts occurred in part before and in part after section 288.5 became effective. The defendant argued application of section 288.5 to him violated the federal and state Constitutional ex post facto clauses. Our Supreme Court disagreed: "[T]he primary purpose of the ex post facto clauses in the federal and state Constitutions is to ensure 'that legislative Acts give *fair warning* of their effect . . . .' (*Weaver v. Graham* [(1981)] 450 U.S. [24,] 28, italics added.) Here, section 288.5 gave 'fair warning' to those engaged in the sexual abuse of a child before the statute's enactment that they would be punished under the new law if they continued the sexual abuse after section 288.5 took effect. Those engaged in child molestation before the effective date of section 288.5, but not thereafter, are not subject to prosecution for continuing sexual abuse. But those who, like defendant, chose to continue such conduct after the effective date of section 288.5 were on notice that they would be subject to prosecution under that section. [¶] For these reasons, we conclude that defendant's conviction for continuing sexual abuse of a child did not violate the

9

provisions of the state and federal Constitutions against ex post facto laws." (*People v. Grant, supra,* 20 Cal.4th at p. 162.)

Our Supreme Court's decision in *Grant* relied in part on an earlier Court of Appeal decision, *People v. Palacios, supra,* 56 Cal.App.4th at pages 256-257. (*People v. Grant, supra,* 20 Cal.4th at p. 159.) In *Palacios,* the Court of Appeal for the First Appellate District, Division Two, considered the application of a conduct credit limitation to a straddling offense. The defendant was convicted of continuous sexual abuse of a child, a violation of section 288.5. The Court of Appeal held section 288.5 punished a continuous course of conduct. (*Id.* at p. 257.) Section 2933.1, which limits presentence conduct credits for violent felons, was enacted after defendant commenced the offending acts, but before he committed the last of them. (*Id.* at p. 256.) The Court of Appeal concluded applying the conduct credit limitation to the defendant did not violate ex post facto principles: "'The critical question is whether the law changes the legal consequences of acts *completed* before its effective date.' ([*Weaver v. Graham, supra,* 450 U.S. at p.] 31, italics added.) . . . [¶] Section 288.5 punishes a continuous course of conduct . . . . A continuous course of conduct offense cannot logically be 'completed' until the last requisite act is performed. Where an offense is of a continuing nature, and the conduct continues after the enactment of a statute, that statute may be applied without violating the ex post facto prohibition. [Citations.]" (*People v. Palacios, supra,* 56 Cal.App.4th at p. 257.)

In our case, during the time defendant stalked the victim, from July 23, 2009, to May 18, 2012, the highest rate of conduct credit accrual was one day for every one day in presentence custody. All of the aforementioned amendments to the conduct credit accrual rate were effective prior to the date on which defendant's stalking ceased. And defendant had fair warning that, if the stalking persisted, he would potentially serve a longer prison term due to a decrease in the presentence custody credit accrual rate. (*Weaver v. Graham, supra,* 450 U.S. at p. 28; *People v. Grant, supra,* 20 Cal.4th at p. 162.)

10

## D. Defendant's Custody and Conduct Credits

The failure to properly calculate custody and conduct credit is a jurisdictional error that can be corrected at any time. (*People v. Scott* (1994) 9 Cal.4th 331, 354; *People v. Karaman* (1992) 4 Cal.4th 335, 345-346, fn. 11, 349, fn. 15; *People v. Gisbert* (2012) 205 Cal.App.4th 277, 280-282; *People v. Taylor* (2004) 119 Cal.App.4th 628, 647.) Defendant was in custody for 70 days from his arrest on June 28, 2012, until his sentencing on September 5, 2012. The execution of sentence was suspended and he was placed on probation. Defendant served an additional 143 days in custody from October 10, 2012, when he was arrested for violating his probation, until March 1, 2013, when the previously suspended sentence was imposed. Defendant received credit for 90 days in custody from June 28 to September 5, 2012 and 143 days in custody from October 10, 2012 to March 1, 2013. In addition, defendant received 143 days of conduct credit. The total was 376 days. That award was incorrect. As discussed above, defendant should have received conduct credit at a rate of two days for every two days in presentence custody under section 4019 as amended in 2011. (Stats. 2011, ch. 15, § 482.) Defendant was entitled to 70 days of custody credit and 70 days of conduct credit for his first period of custody. He was further entitled to 143 days of custody credit for his second period of custody. But he was entitled to only 142 days of conduct credit because he served an odd number of days during his second period of custody. (*People v. Dieck, supra*, 46 Cal.4th at p. 943; *People v. Smith, supra*, 211 Cal.App.3d at p. 527.) The judgment must be modified and the abstract of judgment amended to award defendant 213 days of presence custody credit and 212 days of conduct credit for a total of 425 days.

## III. DISPOSITION

The judgment is modified to reflect 213 days of presence custody credit and 212 days of conduct credit for a total presence custody credit of 425 days. The judgment is affirmed in all other respects. Upon remittitur issuance, the superior court

11

clerk is to prepare an amended abstract of judgment and deliver a copy to the Department of Corrections and Rehabilitation.

**CERTIFIED FOR PUBLICATION**


TURNER, P.J.

We concur:


MOSK, J.


MINK, J.*

---

*     Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.