Filed 8/27/15  P. v. Banks CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B258143 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA087284) |
| v. | |
| TONY HAYWARD BANKS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Candace Beason, Judge.  Affirmed as modified.

Sunnie L. Daniels, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Jaime L. Fuster, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Following a joint jury trial, defendants Tony Hayward Banks, David Sutherland and Maurice Luchon Gibbs were convicted of multiple counts of burglary.[1]  This appeal is by defendant Banks (appellant), only.  He contends the evidence was insufficient to support his conviction of first degree burglary on counts 2 and 3.  Additionally, the People contend the appellant's presentence conduct credits must be reduced which the appellant concedes.  We modify the judgment to correct the custody credits.  In all other respects, the judgment is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

1.      *Arzoumanian First Degree Burglary (Count 1) and Second Degree Burglary (Count 4)*

Larry Arzoumanian owned two houses next to each other on the 1100 block of Mound Avenue in South Pasadena.  He lived in one and used the other to store personal property, including family paperwork.  Arzoumanian was home all morning on August 28, 2012.  That afternoon, he received a call from the South Pasadena Police

---

[1]      All undesignated statutory references are to the Penal Code.

Appellant, Sutherland and Gibbs were jointly charged by information with three counts of first degree burglary (§ 459, counts 1, 2, and 3) and one count of second degree burglary (§ 459, count 4); defendant was also charged with receiving stolen property (§ 496, subd. (a), count 5); it was further alleged that count 1 was a violent felony (§ 667.5, subd. (c)); various prior conviction and prison term enhancements were also alleged.  All three defendants were found guilty on counts 1, 2, 3 and 4; the jury found true the violent felony enhancement on count 1; appellant was found not guilty of receiving stolen property (§ 496, subd. (a), count 5).

Following a bifurcated trial, the trial court found true the allegation that appellant had two prior Three Strikes law convictions (§ 1170.12, subds. (a)-(d), § 667, subds. (b)-(i)), two prior serious felony convictions (§ 667, subd. (a)(1)); and had served three separate prison terms (§ 667.5, subd. (b)).

Appellant was sentenced to a total of 35 years to life in prison comprised of 25 years to life on count 1 pursuant to the Three Strikes law, plus a consecutive 10 years pursuant to section 667, subdivision (a)(1) (one five-year term on each of two prior serious felony convictions); identical concurrent terms were imposed on counts 2 and 3; the trial court imposed but stayed a two-year mid-term on count 4.

Department concerning a possible theft or burglary. Arzoumanian checked the house he used for storage and discovered evidence of a break in. Inside, the paperwork which Arzoumanian kept neatly stacked by year was tossed about. Some appeared to be missing. Arzoumanian noticed shoe prints outside the back door.

Next, he walked around the other home and discovered his ladder had been moved from its usual position between the two houses. A closed bedroom window was open. Arzoumanian found another set of shoe prints on the window sill.

Police observed no signs of forced entry at either house but made "lifts" of the shoe prints. A forensic expert opined these shoe prints were "very similar" to the shoes appellant was wearing at the time of his arrest.

2.      *Gonzales First Degree Burglary (Count 2)*

Mildred Gonzales lived with her three children in a townhouse on the 300 block of North Chapel Avenue in the City of Alhambra. She locked the front door when she left for work sometime between 6:00 and 6:30 a.m. She instructed her children to lock the door when leaving for school an hour later. Gonzales returned home at about 3:00 p.m. in response to a telephone call from the Alhambra Police Department. Upon entering her home with an officer, she observed the inside was ransacked. She discovered a Toshiba laptop computer (along with related accessories), an Olympus camera (and case), and an iTouch (and related accessories) were missing.

3.      *Pu First Degree Burglary (Count 3)*

Feng Pu lived alone in a single family house on the 700 block of East Commonwealth Avenue in the City of Alhambra. Sometime between 10:10 and 10:40 a.m., Pu left for the gym and locked the door behind him. After receiving a call from a neighbor, Pu returned home to discover it had been ransacked. A screen on one of the windows in the back of the house was on the floor, next to the window. He discovered several items missing from his bedroom: a shaving kit containing loose coins and an eye glass case containing credit cards and identification.

3

## 4. *Discovery of the Stolen Property*

On the same morning, Officer Art Fernandez interviewed Marcella Robles who called 911 to report three men involved in suspicious activity. At about 10:30 a.m., Robles was parked on the 200 block of South Hildago Street, in the City of Alhambra, when she observed an older model gold or bronze sedan, possibly a Ford Taurus, drive slowly north and then south on that street before it stopped and let out two men. One of the men was "real tall" and was wearing a baggy, white T-Shirt and the other was shorter, thinner and had "some kind of a little hat or something covering his head." After the car drove away, both men walked up the driveway of the house across the street from where Robles was parked. They then disappeared behind the house. A few minutes later, both men walked back down the driveway to the street where they were picked up by the same car. The men did not appear to be carrying anything.

Officer Fernandez investigated the call and found no evidence of crime at the house where Robles indicated she observed the two men. Fernandez continued to patrol keeping a look out for the suspicious individuals. Between 20 and 30 minutes later, Fernandez was a few blocks away from the Hidalgo Street area when he noticed appellant, wearing a skull cap, seated in the back seat of a faded, light gray or silver Pontiac Grand Prix. After calling for backup, Fernandez initiated a traffic stop and made contact with the driver, codefendant Gibbs, the registered owner of the car. Gibbs was wearing a white T-shirt. Codefendant Sutherland, who was in the front passenger seat, was wearing a brown shirt. After Gibbs gave the officers permission to search, one of the officers discovered a trap door allowing access from the back seat into the trunk of the car. Upon opening the trap door, the officer saw a laptop computer, a camera, a shaving kit bag and an iTouch. Arzoumanian's bank statements as well as a handle of a broken screw driver were also found there. A metal shank of a screw driver was found wedged into the back seat cushions next to appellant's seat. On the floor board by appellant's seat, officers found ear buds for an iPod or iPhone.

4

Robles was brought to where appellant and his two codefendants were detained. She identified appellant and Sutherland as the two men she saw walking up the driveway.[2]

Later, Gonzalez identified the computer, camera and iTouch found in the trunk, and the ear buds found in the back seat, as her missing property. Pu identified the coin-filled shaving kit and eye glass case full of credit cards as his property. Arzoumanian identified the bank statements as his property.

## DISCUSSION

A. *Sufficiency of the Evidence*

Appellant does not challenge the convictions on counts 1 and 4, the Arzoumanian burglaries. However, he contends insufficient evidence supports the convictions of the Gonzales (count 2) and Pu (count 3) burglaries.

In a sufficiency of the evidence challenge, we review the whole record, in the light most favorable to the prosecution, to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt; in so doing, we presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict. [Citation.]" (*Ibid*.) The same standard applies where the prosecution relies primarily on circumstantial evidence. (*Ibid*.)

Appellant relies on cases which hold mere access or proximity to stolen goods without evidence from which dominion and control can be inferred is insufficient to support a finding of possession. (See e.g. *People v. Martin* (1973) 9 Cal.3d 687, 695-696 [evidence defendant had stolen goods in the trunk of his car, taken from codefendant's

---

**2** At trial, the witness was unable to identify any of the codefendants as the men she saw that day. But the officer who brought her to the field identification testified that she identified appellant and codefendant Sutherland.

car, inadequate to sustain conviction for receiving the stolen property in codefendant's car]; *People v. Myles* (1975) 50 Cal.App.3d 423, 429 [evidence stolen television sets are found in trunk of car in which the defendant was a passenger insufficient to sustain conviction for receiving stolen property].)

Appellant argues, "Where, as here, the [appellant] was a passenger in a vehicle containing stolen property, the California appellate courts have repeatedly refused to infer that the [appellant] possessed the property." Appellant's assertion is correct as a general proposition, however, this is not all that the evidence showed. The evidence adduced at trial also showed: (1) appellant was in the back seat of the vehicle within easy reach of a trap door, (2) the officer discovered a trap door in the back seat area of the vehicle leading to the trunk, (3) the officer opened the trap door and located the laptop computer, a shaving kit bag and an iTouch, (3) ear buds (later identified by Gonzalez as her property) were discovered on the floor board where appellant had been seated, (4) a tool consistent with use in a burglary was found wedged in the back seat cushion, (5) Robles identified appellant as one of the two men she observed acting suspiciously, (6) the four burglaries occurred on the same morning around the same neighborhood, (7) shoe prints similar to appellant's shoes were discovered at the Arzoumanian burglaries, and (8) Arzoumanian's bank statements were located in the trunk of the vehicle. These additional pieces of circumstantial evidence, when combined, establish a reasonable inference appellant exercised dominion and control over the items found in the vehicle.

Guilt of a theft-related crime such as burglary may be inferred from possession of stolen property, so long as the possession evidence is corroborated by other evidence. (*People v. Rogers* (2013) 57 Cal.4th 296, 335; *Bradwell v. Superior Court* (2007) 156 Cal.App.4th 265, 272 [burglary is a theft- related offense].) When the defendant is found in possession of property stolen in a burglary shortly after the burglary occurred, only "slight" corroborating evidence is needed to sustain the burglary conviction. (*People v. Mendoza* (2000) 24 Cal.4th 130, 176.) The corroborating evidence requirement is satisfied by the failure to show that the stolen property was honestly obtained. (*People v. Citrino* (1956) 46 Cal.2d 284, 288-289.) The requirement may also

6

be satisfied by evidence that multiple burglaries were committed in a similar manner. (*People v. Robinson* (1960) 184 Cal.App.2d 69, 77.)

The circumstantial evidence itemized earlier also serves to corroborate the burglaries in counts 2 and 3. The suspicious observation by Robles implied appellant and his codefendants were working together scoping a home to burglarize. Three facts all occurring within a single day are also damning: (1) four houses in the same neighborhood were burglarized; (2) items from those houses were found in the vehicle the appellant occupied; and (3) shoe prints discovered at the Arzoumanian burglaries (two of the four burglaries) show defendant committed those burglaries. Additionally, a tool consistent with use in committing a burglary was found in the vehicle near appellant's seat. From all of this, it is reasonable to infer appellant, along with two codefendants, worked as a crew to commit multiple burglaries.

## B.      Custody Credit

The People contend, and appellant does not dispute, the trial court erred by awarding presentence conduct credits based on section 4019 instead of section 2933.1. The failure to properly calculate presentence custody credit is a jurisdictional issue which may be corrected at any time. (*People v. Chilelli* (2014) 225 Cal.App.4th 581, 591.)

Presentence credits for a violent felony as defined in section 667.5, subdivision (c), are governed by section 2933.1. Section 2933.1 restricts work and conduct credits to 15 percent. (See § 2933.1, subd. (a) ["Notwithstanding any other law, any person who is convicted of a felony offense listed in subdivision (c) of Section 667.5 shall accrue no more than 15 percent of worktime credit, as defined in Section 2933."]; § 2933.1, subd. (c) ["Notwithstanding section 4019 or any other provision of law, the maximum credit that may be earned against a period of confinement in, or commitment to, a county jail, industrial farm, or road camp, or a city jail, industrial farm, or road camp, following arrest and prior to placement in the custody of the Director of Corrections, shall not exceed 15 percent of the actual period of confinement for any person specified in subdivision (a)."].)

7

Here, the jury found the special allegation pursuant to section 667.5, subdivision (c)(21) true.[3]  Appellant was therefore subject to the 15 percent limit under section 2933.1.  But the trial court awarded 1406 days of presentence custody credit, comprised of 703 actual days and 703 days of conduct and work credit, and failed to apply section 2933.1.  Pursuant to that section, defendant was entitled to 105 days of conduct/work credit – 15 percent of 703.

**DISPOSITION**

The judgment is modified to reflect a total of 808 days of presentence custody credits comprised of 703 days in actual custody plus 105 days of conduct credit.  The trial court is directed to amend the abstract of judgment to reflect the modification and forward copies to the Department of Corrections and Rehabilitation.  In all other respects the judgment is affirmed.

OHTA, J.[*]

WE CONCUR:

BIGELOW, P. J.

GRIMES, J.

---

[3]      Section 667.5, subdivision (c)(21) provides, "Any burglary of the first degree, as defined in subdivision (a) of Section 460, wherein it is charged and proved that another person, other than an accomplice, was present in the residence during the commission of the burglary."

[*]      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8