Filed 1/19/16  P. v. Rivers CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANTHONY GENE RIVERS,<br><br>    Defendant and Appellant. | B257666<br><br>(Los Angeles County<br>Super. Ct. No. BA420889) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Monica Bachner, Judge.  Affirmed.

Randy S. Kravis, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell, and Eric E. Reynolds, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Anthony Gene Rivers, a registered sex offender, appeals from the judgment entered following his conviction by a jury for failure to notify authorities of his address change. Rivers, who is blind, contends the trial court abused its discretion in granting his request for self-representation and committed sentencing errors. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Amended Information*

Rivers was charged by amended information with failure to timely notify authorities he was moving and to provide his new address. (Pen. Code, § 290.013, subd. (b).)[1] It was specially alleged Rivers had suffered eight prior serious felony convictions within the meaning of section 667, subdivision (a), and the three strikes law (§§ 667, subds. (b)-(i), 1170.12),[2] and had served six separate prison terms for felony convictions (§ 667.5, subd. (b)). Rivers pleaded not guilty and denied the special allegations.

2. *Rivers's Request for Self-representation; the Appointment of Advisory Counsel and Other Measures To Accommodate Rivers's Disability*

On February 27, 2014 Rivers first asserted his right to self-representation. Because Rivers is blind, the court (Judge Renee Korn) read to him the "Advisement and Waiver of Right to Counsel (Faretta Waiver)," which included sections advising him of the dangers and disadvantages of self-representation, and recommended Rivers not act as

---

[1] Penal Code section 290.013, subdivision (a), requires registered sex offenders who change their residence to inform law enforcement of their new address or transient location within five working days of the move. Subdivision (b) provides, "If the person does not know the new residence address or location at the time of the move, the registrant shall, in person, within five working days of the move, inform the last registering agency or agencies that he or she is moving. The person shall later notify the last registering agency or agencies, in writing, sent by certified or registered mail, of the new address or location within five working days of moving into the new residence address or location, whether temporary or permanent."

Statutory references are to this code.

[2] Rivers's serious felony convictions included two in 1974 for committing lewd or lascivious acts with a child; one in 1978 and another in 1983 for rape; kidnapping in 1978; and robbery in 1990.

his own attorney. After Rivers, who was already representing himself in another criminal action, acknowledged he understood what the court had read to him and freely and voluntarily waived his right to appointed counsel, the court granted his request for self-representation.

At his March 26, 2014 arraignment Rivers again asserted his right to self-representation. Rivers informed the court (Judge Monica Bachner) that his cellmate had been reading materials to him and would continue to do so. Rivers also stated, in addition to representing himself in another criminal matter pending at that time, he had represented himself several times during the last 10 years before he lost his sight. The court then warned Rivers about the dangers of self-representation and read to him, as Judge Korn had, the Faretta Waiver. The court emphasized Rivers would face even greater challenges than those presented by self-representation alone, but Rivers insisted his blindness was not a hurdle:

"The Court: Mr. Rivers, the other inmates in the county jail are not there to help you. So, if you're in the law library and you're not able to read the materials, how do you expect to proceed? How do you expect to prepare motions?

"[Rivers]: They do help me.

"The Court: They don't have to.

"[Rivers]: I understand, but I'm saying I do have help.

"The Court: Well, I'm just saying that it's going to be even more difficult for you than anybody else, because you're not able to see. So I'm not quite understanding how well you're going to do research. Another inmate doesn't have the interest in doing your research.

"[Rivers]: I do really have the materials that I need already to proceed with trial right now.

"The Court: . . . . That's good to know. But I just wanted to let you know that obviously, it's going to be a big issue to do research because you can't.

"[Rivers]: There is no research to be done anymore. Like I say, I have the materials now." After Rivers stated he understood all the warnings and advisements the

3

court had read, the court found he had knowingly and understandingly waived his right to appointed counsel. Standby counsel was appointed.

At a May 14, 2014 hearing during which Rivers was arraigned on the amended information, Rivers contended his right to a speedy trial had been violated. After a protracted exchange with the court about certain procedural issues, the court said it would revoke Rivers's self-represented status if he did not follow proper procedures and continued to interrupt the court. In response to the court's inquiry whether Rivers understood, he said, "Yeah, I understand what you're saying, but I don't understand what you're doing." The court replied, "That is why you're making a big mistake and you should have a lawyer representing you. Because a lawyer understands what the procedures are. And if there were motions, a lawyer would file the motion in a proper manner, give proper notice to the parties. You're putting yourself at a disadvantage, sir, by not having a lawyer. . . . But it's your right. If you don't want to have a lawyer, you don't have to have one."

At the outset of trial on May 22, 2014 the court asked Rivers how he expected to proceed with trial if he could not read the witness list the prosecutor had provided. Rivers responded, "They're just witnesses. I can cross-examine them without knowing who they are." The court urged Rivers to relinquish his self-represented status and allow standby counsel to represent him. Rivers said, "I don't need no standby counsel. Call in the jury."

To accommodate Rivers during voir dire, the court permitted prospective jurors to raise personal issues in the courtroom after the rest of the prospective jurors had been excused instead of conducting sidebar proceedings. Rivers was also permitted to question jurors from his seat and to consult with standby counsel if he needed help keeping track of prospective jurors as they changed seats in the jury box. Rivers successfully argued several prospective jurors should be dismissed for cause.

When trial proceedings commenced on May 23, 2014, the court again asked Rivers if he wanted to continue representing himself. After Rivers confirmed he did, the court appointed standby counsel as advisory counsel to answer legal questions he might

4

have and to read documents to him. The court explained it would not ordinarily appoint advisory counsel, but did so because of Rivers's "limitations problems." Rivers requested that the court not introduce advisory counsel to the jury and opted not to have her sit next to him.

   3. *Summary of the Evidence Presented at Trial*

   On January 20, 2014 Rivers was arrested at a convenience store for an unrelated incident. He appeared homeless and told officers he did not have an address. The prosecutor in the unrelated incident contacted Los Angeles Police Officer Tatiana Bohorquez, assigned to the sex offender registration enforcement and compliance team, to inquire about Rivers's registration. Bohorquez determined Rivers had last registered on July 25, 2013, providing addresses for two housing programs. Representatives from the programs testified there were no records that Rivers had resided at their facilities or received a housing referral. Bohorquez testified there was no evidence Rivers had registered as a transient between July 25, 2013 and the date of his arrest.

   4. *The Verdict and Sentence*

   The jury found Rivers guilty of failure to timely notify authorities he had changed his residence. After the trial court in a separate proceeding found true the special allegations, it sentenced him to an aggregate state prison term of nine years, comprised of the upper term of three years, doubled to six years pursuant to the three strikes law,[3] plus one year for each of the three prior separate prison terms Rivers had served. The court ordered Rivers to pay a $300 restitution fine (§ 1202.4, subd. (b)) and a $300 parole revocation fine (§ 1202.45), which was stayed.

---

[3]   Although Rivers had multiple strike priors, the People elected to prosecute the offense only as a second strike case, not a third strike case.

## DISCUSSION

1. *The Trial Court Did Not Abuse Its Discretion in Granting Rivers's Request for Self-representation*

   a. *Governing law*

A criminal defendant is entitled under the Sixth and Fourteenth Amendments to waive his right to counsel and to represent himself. (*Faretta v. California* (1975) 422 U.S. 806, 818-819 [95 S.Ct. 2525, 45 L.Ed.2d 562] (*Faretta*) ["[t]he Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense"].) "Under *Faretta*, a defendant 'must be free personally to decide whether in his particular case counsel is to his advantage,' even though 'he may conduct his own defense ultimately to his own detriment.'" (*People v. Trujeque* (2015) 61 Cal.4th 227, 262.) Thus, if the defendant is mentally competent and within a reasonable time before trial makes an unequivocal request to represent himself or herself, knowingly and intelligently after having been advised by the court of the dangers of self-representation, the request must be granted. (*Faretta, supra*, 422 U.S. at p. 835; *People v. Jackson* (2009) 45 Cal.4th 662, 689.)

In considering whether a defendant is competent to represent himself or herself, "the standard that trial courts . . . should apply is simply whether the defendant suffers from a severe mental illness to the point where he or she cannot carry out the basic tasks needed to present the defense without the help of counsel." (*People v. Johnson* (2012) 53 Cal.4th 519, 530 (*Johnson*); accord, *People v. Gardner* (2014) 231 Cal.App.4th 945, 958.) "Trial courts must apply this standard cautiously. . . . Self-representation by defendants who wish it and validly waive counsel remains the norm and may not be denied lightly. A court may not deny self-representation merely because it believes the matter could be tried more efficiently, or even more fairly, with attorneys on both sides." (*Johnson*, at p. 531.)

"As with other determinations regarding self-representation, [the reviewing court] must defer largely to the trial court's discretion. [Citations.] The trial court's determination regarding a defendant's competence must be upheld if supported by

substantial evidence.  [Citation.]  Such deference is especially appropriate when . . . the same judge has observed the defendant on numerous occasions." (*Johnson*, *supra*, 53 Cal.4th at p. 531.)

b. *Rivers, as accommodated, was competent to present a defense*

Rivers argues, by analogy to the *Johnson* standard to determine whether defendants are mentally competent to represent themselves, blind defendants should not be permitted to represent themselves because they cannot carry out the basic tasks needed to present a defense, including reading and drafting pleadings, conducting legal research, and observing jurors to gauge whether a particular line of defense or questioning is having a positive impact on them.

Even if the *Johnson* standard were applicable to determine whether physically disabled defendants may represent themselves, Rivers's proposed categorical prohibition of blind defendants from exercising their *Faretta* right to self-representation is wholly without merit.  Many legally blind individuals would be fully capable of representing themselves should they elect to exercise their right to do so, particularly, where, as here, the court went to great lengths to ensure accommodations were provided to permit the defendant to carry out the basic tasks needed to present a defense.[4]  Over Rivers's insistence he did not need accommodations, for example, the court appointed advisory counsel to read documents to Rivers and to answer any questions and modified the manner in which voir dire was conducted so Rivers would not have to approach the bench for sidebar conferences.  The record further amply demonstrates the challenge Rivers confronted was not due to his blindness, but rather to his lack of familiarity with criminal procedure, stubbornness and failure to appreciate the legal issues.  These are the same challenges many self-represented defendants face, but it is not a basis to deny them

---

[4]     Rivers's proposed per se rule of incapacity is as inapplicable to blind defendants seeking to represent themselves as it is to blind and sight-impaired lawyers and judges, who include within their number former civil rights attorney and current Michigan Supreme Court Justice Richard Bernstein, the late United States District Judge Richard Casey and United States Circuit Judge David S. Tatel.

the right to represent themselves. (See *People v. Taylor* (2009) 47 Cal.4th 850, 866 ["the likelihood or actuality of a poor performance by a defendant acting in propria persona [does not] defeat the federal self-representation right"]; *People v. Miranda* (2015) 236 Cal.App.4th 978, 989 ["We recognize that Miranda was sometimes inarticulate and ineffective. Of course that is no doubt the norm in many self-represented cases, not the exception. Those are the risks assumed by any defendant who chooses to represent himself."].) Indeed, on several occasions after Rivers displayed a lack of fundamental understanding about the law, made strategically poor choices,[5] or appeared confused, the court reiterated the dangers of self-representation and asked if he wanted appointed counsel or to consult with advisory counsel. Rivers repeatedly refused. The court did not abuse its discretion in granting Rivers's request for self-representation.

   2. *The Trial Court Did Not Err in Sentencing Rivers to the Upper Term*

When a determinate sentencing statute authorizes three possible terms of imprisonment, "the choice of the appropriate term shall rest within the sound discretion of the court." (§ 1170, subd. (b).) "The court shall select the term which, in the court's discretion, best serves the interests of justice." (*Ibid*.) In exercising that discretion, the sentencing court "may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision." (Cal. Rules of Court, rule 4.420(b).)[6] The existence of a single aggravating circumstance is legally sufficient to

---

5    For example, in either a fundamental error in judgment or misunderstanding of procedure, Rivers refused to stipulate he had suffered prior convictions that required him to register as a sex offender or agree to bifurcate the proceedings. Rivers insisted he understood the issues, but said, "I'm just not participating in what [the prosecutor's] trying to do. If that's her job, let's move forward because I'm denying all the priors and I'm not agreeing to bifurcate anything." The court explained the reason bifurcation was to Rivers's advantage, but he nevertheless refused to bifurcate or consult with advisory counsel. Rivers later waived a jury trial on the question whether he had served separate prison terms for those prior felony convictions. Of course, that was too late to avoid the effect on the jury of having heard evidence of the specific convictions.

6    California Rules of Court, rule 4.421(b) identifies aggravating factors relating to the defendant including "[t]he defendant has engaged in violent conduct that indicates a

make the defendant eligible for imposition of the upper term. (*People v. Black* (2007) 41 Cal.4th 799, 816; *People v. Osband* (1996) 13 Cal.4th 622, 728; see *People v. Quintanilla* (2009) 170 Cal.App.4th 406, 413.)

In sentencing Rivers to the upper term of three years for failing to register as a sex offender, the court found there were no mitigating circumstances and four aggravating circumstances: (1) Rivers had in the past engaged in violent conduct, indicating a serious danger to society; (2) his prior convictions as an adult were numerous; (3) he had served prior prison terms; and (4) his prior performance on probation or parole was unsatisfactory. Rivers contends the trial court improperly imposed the upper term based on his criminal history, which the court also used to enhance his sentence under section 667.5, subdivision (b).

Rivers forfeited this argument by failing to raise it in the trial court. (*People v. Boyce* (2014) 59 Cal.4th 672, 730; accord, *People v. McCullough* (2013) 56 Cal.4th 589, 594-595.)[7] In addition, the argument lacks merit: Rivers concedes the court would have been justified in imposing the upper term based on his history of committing violent crimes. Nonetheless, he argues, the matter should be remanded for resentencing because the court acknowledged there was nothing particularly egregious about the registration/notice crime itself and it is thus reasonable to conclude its reliance on three

---

serious danger to society"; "[t]he defendant's prior convictions as an adult . . . are numerous or of increasing seriousness"; "[t]he defendant has served a prior prison term; "[t]he defendant was on probation or parole when the crime was committed; and "[t]he defendant's prior performance on probation or parole was unsatisfactory."

References to rule or rules are to the California Rules of Court.

[7] When the court asked Rivers what his position was as to sentencing, Rivers replied, "I don't have a position." "You can continue on with the sentencing." He subsequently requested the court impose the low term, but did not have any reasons to support his request. Had Rivers objected on the ground the court had impermissibly considered duplicative factors, the court could have easily corrected the error. (See *People v. Scott* (1994) 9 Cal.4th 331, 353 ["[r]outine defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention"].)

additional aggravating factors, all of which related to his criminal history, improperly influenced its decision to impose the upper term.

In addition to Rivers's past violent conduct, the court properly relied on the fact he had numerous prior convictions (rule 4.421(b)(2)) and his prior performance on probation or parole had been unsatisfactory (rule 4.421(b)(5)) in choosing to impose the upper term. (See *People v. Yim* (2007) 152 Cal.App.4th 366, 369 [unsatisfactory performance on parole, which includes committing offenses while on parole, and having numerous prior convictions are distinct aggravating factors, both of which differ from having served prior prison terms].) Although the court erred in also identifying Rivers's prior prison terms as a fourth aggravating factor since it used that fact to enhance his sentence pursuant to section 667.5, subdivision (b) (see rule 4.420(c)), it is not reasonably probable he would have obtained a more favorable result in the absence of the error. (*People v. Osband*, *supra*, 13 Cal.4th at p. 728 ["'[i]mproper dual use of the same fact for imposition of both an upper term and a consecutive term or other enhancement does not necessitate resentencing if "[i]t is not reasonably probable that a more favorable sentence would have been imposed in the absence of the error"'"]; *People v. Calhoun* (2007) 40 Cal.4th 398, 410 ["'[w]hen a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper'"].)

3. *The Court Did Not Err in Imposing $300 Restitution and Parole Revocation Fines*

The court imposed victim restitution and parole revocation fines of $300 each,[8] describing the victim restitution fine as "the minimum." Rivers contends the court erred because the statutory minimum applicable to offenses committed before January 1, 2014 was $280. (§ 1202.4.)[9] Although the information alleged Rivers failed to notify

---

8    The parole revocation fine was stayed.

9    Section 1202.4, subdivision (b)(1), in part provides, "The restitution fine shall be

10

authorities of his change in address between July 26, 2013 and January 20, 2014, he argues it is more likely the crime was committed before January 1, 2014, that is, before the increase in the minimum fine. (See *People v. Lewis* (1991) 229 Cal.App.3d 259, 264 ["[c]ircumstances on which a trial court relies in making a sentencing choice must be established by preponderance of the evidence"].) He further argues the ex post facto clauses of the federal and California constitutions prohibit a fine in the amount prescribed following the increase.

Imposition of a new, harsher penalty for a "straddle" offense—a crime that begins before and continues after a law's effective date—does not violate ex post facto principles. (*People v. Grant* (1999) 20 Cal.4th 150, 159-160; *People v. Chilelli* (2014) 225 Cal.App.4th 581, 588-590.) Recognizing this principle, Rivers argues the crime of failing to register within five days of an address change is not a continuous offense. In *Wright v. Superior Court* (1997) 15 Cal.4th 521, however, the Supreme Court held failure to register within a specified number of days from a change in residence under former Penal Code section 290, subdivision (f), is a continuing offense. The Court explained, "A defendant does not commit the crime only at the particular moment the obligation arises, but every day it remains unsatisfied. Given the persistent and palpable threat to society sex offenders represent, 'the nature of the crime involved is such that [the Legislature] must assuredly have intended that it be treated as a continuing one.'" (*Wright*, at p. 528; see *ibid.* ["[c]haracterizing any violation of section 290 as an instantaneous offense would effectively 'eviscerate' the statute"].) Thus, the court did not err in imposing $300 as the minimum statutory fine.

---

set at the discretion of the court and commensurate with the seriousness of the offense. If the person is convicted of a felony, the fine shall not be less than two hundred forty dollars ($240) starting on January 1, 2012, two hundred eighty dollars ($280) starting on January 1, 2013, and three hundred dollars ($300) starting on January 1, 2014, and not more than ten thousand dollars ($10,000)."

**DISPOSITION**

The judgment is affirmed.


                                        PERLUSS, P. J.

We concur:


    SEGAL, J.


    BLUMENFELD, J.*

---

\*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.