Filed 7/22/16  P. v. Russell CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>RONALD EUGENE RUSSELL,<br><br>  Defendant and Appellant. | C076370<br><br>(Super. Ct. No. 12F05835) |

A jury found defendant Ronald Eugene Russell guilty of 49 counts of grand theft (Pen. Code,[1] § 487, subd. (a)) and 2 counts of petty theft (§ 484, subd. (a)) and found true two enhancements (§§ 186.11, subd. (a), 12022.6, subd. (a)(1)).  The trial court sentenced defendant to serve 13 years 4 months in state prison.

---

[1]  Undesignated statutory references are to the Penal Code.

1

On appeal, defendant contends the trial court incorrectly calculated his presentence custody credits by using the wrong version of section 4019.

We conclude defendant is entitled to the current credit accrual rate under section 4019. Under this calculation, defendant should have received two days of conduct credit for every two days he spent in presentence custody. We modify the award of conduct credits, and affirm the judgment as modified.

FACTUAL AND PROCEDURAL BACKGROUND

In light of the limited issue presented by defendant, a detailed recitation of the facts underlying defendant's convictions is not necessary for our resolution of this appeal. The facts are summarized from the probation report as follows.

Between October 2009 and July 2010, defendant was a licensed real estate broker doing business as "Summer Hills Realty," "R. Russell Properties, LLC.," and other names. Defendant conducted a "Rent to own" program he advertised via the local newspaper, radio advertisements, and internet Websites. Defendant profited from the business by requiring clients to pay an up-front or buy-in fee of $2,900. In return, defendant would provide the client with a list of foreclosed homes and the client would select from that list (or identify on his or her own) a home the client wished to eventually own pursuant to defendant's program. Defendant would purchase the selected home on behalf of the rent to own client and lease the home to the client for up to two years. At some point during the lease period, defendant would allow the client to purchase the home from him and transition from renter to homeowner.

As part of the program, the client was required to sign defendant's contract that provided the $2,900 up-front fee would pay for moving costs, first month's rent, and security deposit, and would be applied to the down payment and closing costs when the client elected to purchase the property. The contract further provided the $2,900 up-front

2

fee was the total amount of money required to join the rent to own program and to transition from renter to homeowner; the entire up-front amount was refundable upon written request at any time before the client elected to move into the property; and the client's eventual purchase price of the home would be the same price defendant initially paid for the property.

More than 80 clients signed up for defendant's rent to own program. None of those clients moved into a house during the lease portion of the program, nor did any of them actually become homeowners. Several of the clients selected homes from the list provided by defendant, but were subsequently told the offers made on their behalf "had not been accepted" or someone else "beat them to it." Some of the clients eventually contacted the actual sellers and learned either no offer had been submitted by defendant or defendant did not have sufficient funds to complete the purchase. While defendant had initially informed clients the rent to own program was backed by "investors" who had money available for the purpose of purchasing homes for the program's clients, he later told the California Bureau of Real Estate the funding from his investors had fallen through. However, evidence eventually revealed defendant never purchased a single home for any of the rent to own clients and instead deposited the clients' money into his own personal bank account (rather than a separate escrow account as promised) and used that money for his personal expenses.

Eventually, all but one of the rent to own clients known to the district attorney's office requested refunds of their up-front payments. Approximately 30 program clients (those who joined the program at an earlier date) received a refund, while over 50 clients (those who joined later) did not. Defendant's bank accounts revealed the refunds to the clients who joined earlier were funded by the up-front fees paid by clients who joined later.

The amended information alleged as to each count that the offenses occurred "on or about and between July 1, 2009, and December 31, 2011." Defendant was taken into custody on September 20, 2012, and sentenced on April 25, 2014, having spent a total of 583 days in custody. At sentencing, pursuant to the recommendation of the probation department that credits be calculated under "SBX 18" for "crimes committed prior to September 28, 2010," the court awarded defendant 583 days of actual credit, plus 290 days of conduct credit, for a total of 873 days of presentence custody credit. Defense counsel objected to the court's calculation.

## DISCUSSION

On appeal, defendant contends the trial court incorrectly applied the pre-January 25, 2010 version of section 4019 to calculate his presentence conduct credits. He claims he should receive one-for-one credits for all time served after January 25, 2010, the operative date of the amendment of section 4019, resulting in a total of 1,166 days of presentence custody credit. He further claims the January 25, 2010 amendment applied to all counts because he took the up-front fee after that date, he committed his last criminal act after that date, and/or Ponzi schemes like the one he committed are by definition continuous crimes.

The People agree the trial court erred and argue regardless of whether defendant's offenses are separate or a continuous course of conduct, defendant is entitled to the current credit accrual rate under section 4019. Under this calculation, defendant should have received two days of conduct credit for every two days he spent in presentence custody, resulting in a total of 1,165 days of presentence custody credit. The People are correct.

4

## A.

### *Section 4019 Amendments*

Under section 4019, a prisoner in custody may earn credit against his or her period of confinement under certain conditions.

Prior to January 25, 2010, the former version of section 4019 provided that a defendant could accrue conduct credits at the rate of two days for every four-day period of custody.  (Former § 4019, subds. (b) & (c) [see Stats. 1982, ch. 1234, § 7, p. 4553].)  Effective January 25, 2010, section 4019 was amended to provide that, with exceptions not relevant here, certain prisoners may earn presentence custody credit at an increased rate (two days of conduct credit for every two days of actual custody time). (Former § 4019, subds. (b)(1) & (c)(1) [see Stats. 2009, 3d Ex. Sess., 2009-2010, ch. 28, § 50].)

Effective September 28, 2010, section 4019 was amended to restore conduct credit accrual for all local prisoners to the prior existing rate of two days of credit for every four days in county jail.  (Former § 4019, subds. (b) & (c), as amended by Stats. 2010, ch. 426, § 2.)  Also effective September 28, 2010, section 2933 was amended to provide day-for-day conduct credits for qualifying defendants in local presentence custody who were sentenced to state prison.  (Former § 2933, subd. (e)(1), as amended by Stats. 2010, ch. 426, § 1; *People v. Garcia* (2012) 209 Cal.App.4th 530, 538.)

"Effective October 1, 2011, as part of the realignment legislation, the former section 2933, subdivision (e) presentence conduct credits provision was repealed. Section 4019 returned as the standard for awarding presentence conduct credits.  (Stats. 2011, 1st Ex. Sess. 2011-2012, ch. 12, § 16, § 35.)"  (*People v. Garcia, supra*, 209 Cal.App.4th at p. 539.)  In other words, under section 4019, a defendant in local presentence custody could accrue conduct credit at the rate of two days for every two-day

period.  In its present form, section 4019, subdivision (h), provides:  "The changes to this section shall apply prospectively and shall apply to prisoners who are confined to a county jail, city jail, industrial farm, or road camp for a crime committed on or after October 1, 2011.  Any days earned by a prisoner prior to October 1, 2011, shall be calculated at the rate required by prior law."

**B.**

*Analysis*

A sentence that fails to award legally mandated custody credit is unauthorized and may be corrected whenever discovered.  (*People v. Taylor* (2004) 119 Cal.App.4th 628, 647.)

Here, defendant committed his offenses between July 1, 2009 and December 31, 2011.  During this period of time, section 4019 was amended three times.  Under the October 1, 2011 amendment, the date of the offense triggers the application of section 4019, not the date of custody.  In *People v. Ramirez* (2014) 224 Cal.App.4th 1078, the Court of Appeal, Sixth Appellate District applied the rule of lenity to determine how section 4019 applies to a situation where a defendant committed some of his or her crimes before October 1, 2011 and some of his or her crimes after October 1, 2011.  The court held that a defendant who is sentenced for offenses committed both before and after October 1, 2011 is entitled to conduct credits at the higher rate.  (*Id*. at pp. 1085-1086.)

Defendant was taken into custody on September 20, 2012, and sentenced on April 25, 2014.  The parties agree he was in custody the entire 583 days.  Thus, applying the two-for-two accrual method, defendant is entitled to 583 of actual custody and 582 days of conduct credit, for a total of 1,165 days of presentence custody credit.  (*People v. Chilelli* (2014) 225 Cal.App.4th 581, 588 [under a two-for-two accrual method, "there

6

can be only an even number of presentence conduct credits"].)  We modify the judgment accordingly.

DISPOSITION

The judgment is modified to award defendant 583 days of custody credit and 582 days of conduct credit, for a total of 1,165 days of presentence custody credit.  As so modified, the judgment is affirmed.  The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation.

                                        /s/                    
                              HOCH, J.


We concur:


        /s/                    
BLEASE, Acting P. J.


        /s/                    
NICHOLSON, J.