Filed 10/26/20  P. v. Glavish CA2/5
Opinion following transfer from Supreme Court
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

> **California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B287131 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PA082516) |
| v. | |
| MICHAEL GLAVISH, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, David Walgren, Judge.  Affirmed in part, vacated in part, with directions.

David W. Beaudreau, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior

Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, Kristen J. Inberg, Deputy Attorney General, for Plaintiff and Respondent.

_____

In May 2015, defendant and appellant Michael Glavish was sentenced to 14 years six months in state prison, execution suspended, and granted three years of formal probation.  In October 2017, following a contested hearing, the trial court terminated probation and ordered execution of the previously-imposed prison sentence.

In our prior opinion, we rejected Glavish's argument that he was entitled to retroactive relief under Senate Bill No. 180 (2017–2018 Reg. Sess.) (Senate Bill 180), because the order granting Glavish probation constituted a final judgment of conviction, and became final in 2015.  (*People v. Glavish* (Sept. 24, 2018, B287131) [nonpub. opn.] (*Glavish*).)  We concluded that, to be entitled to retroactive relief, Glavish's case must have still been pending when Senate Bill 180 became effective on January 1, 2018.  (*Ibid*.)  We further concluded that Glavish was entitled to additional custody and conduct credits.  (*Ibid*.)

Glavish petitioned for review, which the Supreme Court granted.  On May 27, 2020, the court transferred the matter back to this court with directions to vacate our decision in *Glavish*, and reconsider the cause in light of its decision in *People v. McKenzie* (2020) 9 Cal.5th 40 (*McKenzie*).

We vacated our original decision in compliance with the Supreme Court's direction. In his supplemental brief following transfer back to this court, Glavish argues that he is entitled to the retroactive application of all ameliorative statutory amendments that have become effective while his case has been pending, including Senate Bill 180 and Senate Bill No. 136 (2019–2020 Reg. Sess.) (Senate Bill 136). The People argue that Glavish is barred from relief because the judgment of conviction in his case was final before either bill became effective.

Having reconsidered the matter in light of *McKenzie*, we conclude that Senate Bill 180 and Senate Bill 136 apply retroactively to Glavish. We also conclude, as we did in our prior opinion, that the record reflects that Glavish was in custody between September 11, 2015, and September 14, 2015, and is entitled to additional presentence credit. The sentence is vacated, and the matter remanded for resentencing.

## PROCEDURAL HISTORY

On May 20, 2015, defendant and appellant Michael Glavish pleaded no contest to transporting methamphetamine for sale (Health & Saf. Code, § 11379, subd. (a) [count 1]),[1] possessing heroin for sale (§ 11351 [count 2]), possessing methamphetamine for sale (§ 11378

---

[1] All future statutory references are to the Health and Safety Code unless otherwise indicated.

3

[count 3]), transporting heroin for sale (§ 11352, subd. (a) [count 4]), misdemeanor driving under the influence (Veh. Code, § 23152, subd. (e) [count 5]), and two counts of misdemeanor obstructing a peace officer (Pen. Code, § 148, subd. (a)(1) [counts 6 & 7]).  With respect to count 5, Glavish admitted the allegation that he refused to submit to a chemical test.  (Veh. Code, § 23612.)  He further admitted that he had suffered a prior conviction within the meaning of section 11370.2, subdivision (a), for violation of section 11379, and served three prior prison terms under Penal Code section 667.5, subdivision (b).

The trial court sentenced Glavish to 11 years in prison in count 4, consisting of the upper term of 5 years, plus 3 years for the section 11370.2, subdivision (a) enhancement, and an additional 3 years pursuant to Penal Code section 667.5, subdivision (b).  Glavish received three consecutive terms of one year each in counts 1, 6, and 7, plus six months in count 5, for a total sentence of 14 years six months.  The trial court suspended execution of sentence and placed Glavish on formal probation for three years.

On October 11, 2017, Senate Bill 180 was signed by the Governor.  The bill later took effect on January 1, 2018.

On October 25, 2017, the trial court revoked probation following a contested hearing, and ordered Glavish to serve the previously pronounced sentence of 14 years 6 months in state prison.

Glavish appealed to this court on December 22, 2017, contending that the three-year term imposed under section

4

11370.2, subdivision (a) must be stricken because his prior conviction for violation of section 11379 no longer constituted a qualifying conviction for purposes of the statute, following the enactment of Senate Bill 180. He further contended that the trial court miscalculated his custody and conduct credits.

On September 24, 2018, we issued our opinion in *Glavish*. We held that Glavish was not entitled to retroactive relief under Senate Bill 180, because the order granting probation constituted a final judgment of conviction, and became final in 2015, when the time period for Glavish to appeal the order granting probation expired. To be entitled to relief, Glavish's case must have been pending when Senate Bill 180 became effective on January 1, 2018. We ordered the abstract of judgment modified to reflect that Glavish was entitled to additional presentence custody credits, but otherwise affirmed the judgment.

Glavish filed a petition for review on October 25, 2018, which our Supreme Court granted on December 19, 2018, pending its disposition of *People v. McKenzie*, S251333.

On January 1, 2020, Senate Bill 136 took effect.

On February 27, 2020, the Supreme Court issued its decision in *McKenzie, supra*, 9 Cal.5th 40. On May 27, 2018, the Supreme Court transferred the matter back to this court with directions to vacate our decision in *Glavish* and to reconsider the cause in light of *McKenzie*.

5

## DISCUSSION[2]

### *Retroactive Applicability of Senate Bills 180 and 136*

Senate Bill 180, which became effective on January 1, 2018, narrows the scope of the three-year enhancement under former section 11370.2, subdivision (a) to apply only to prior convictions for narcotics sales involving a minor in violation of section 11380.  (§ 11370.2, subd. (a).)  Prior to the enactment of the bill, the three-year enhancement under section 11370.2, subdivision (a) applied to 11 enumerated offenses, including Glavish's prior conviction for violation of section 11379.  (Former § 11370.2, subd. (a).)  Senate Bill 180's amendments to section 11370.2 have been held to apply retroactively to all cases that were not yet final when the legislation took effect.  (*People v. Millan* (2018) 20 Cal.App.5th 450, 455–456.)

Senate Bill 136, which became effective on January 1, 2020, narrowed the scope of the one-year enhancement for prior prison terms under Penal Code section 667.5, former subdivision (b), to apply only if the prior prison term was served for a sexually violent offense, as defined in the statute.  (Pen. Code, § 667.5, subd. (b).)  Glavish's prior felony drug convictions were for violations of sections 11379.6, subdivision (a) and 11378; he was not convicted for

---

[2] Because Glavish alleges only sentencing errors, the facts underlying his convictions are unnecessary to the appeal and we do not include them here.

a sexually violent offense and therefore is not subject to the enhancements under the new amendment. Senate Bill 136's amendments to Penal Code, section 667.5, subdivision (b), also apply retroactively to all cases not yet final on its effective date. (*People v. Lopez* (2019) 42 Cal.App.5th 337, 341–342.)

The People do not contest that, if Glavish's conviction was not final at the time that Senate Bills 180 and 136 became effective, he is eligible for relief under the amendments effected by these Senate bills. The only issue before us is whether his case was final at the time the amendments came into effect. After reconsidering the issue in light of *McKenzie*, we conclude that Glavish's case was not final when Senate Bills 180 and 136 became effective, and that he is therefore entitled to relief.

### **People v. McKenzie**

In *McKenzie*, our Supreme Court addressed "whether a convicted defendant who is placed on probation after imposition of sentence is suspended, and who does not timely appeal from the order granting probation, may take advantage of ameliorative statutory amendments that take effect during a later appeal from a judgment revoking probation and imposing sentence." (*McKenzie*, *supra*, 9 Cal.5th 40, 43). Like Glavish, McKenzie argued that the amendments effected by Senate Bill 180 applied to him retroactively, although he had not appealed the trial court's

order granting probation. Unlike Glavish, in McKenzie's case, the trial court had suspended *imposition* of sentence, not *execution* of sentence. The Court of Appeal held that the amendments applied to McKenzie because his case was not yet final when they became effective, and the Supreme Court affirmed.

The *McKenzie* court discussed the seminal case, *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*), which first set forth the rule that, absent a clear indication from the Legislature to the contrary, it is presumed that the Legislature intended ameliorative statutory amendments to "'apply to every case to which [they] constitutionally could apply.'" (*McKenzie*, *supra*, 9 Cal.5th at p. 44, quoting *Estrada*, *supra*, at p. 745.) *Estrada* reasoned that "'[w]hen the Legislature amends a statute so as to lessen the punishment[,] it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. . . . The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final. This intent seems obvious, because to hold otherwise would be to conclude that the Legislature was motivated by a desire for vengeance, a conclusion not permitted in view of modern theories of penology. . . . [¶] . . . "A legislative mitigation of the penalty for a particular crime represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the

8

legitimate ends of the criminal law.  Nothing is to be gained by imposing the more severe penalty after such a pronouncement; the excess in punishment can, by hypothesis, serve no purpose other than to satisfy a desire for vengeance.'"  ([*Estrada*, *supra*,] at pp. 744–745.)"  (*McKenzie*, *supra*, at pp. 44–45.)

*McKenzie* explained that, although *Estrada* applied to amendments that reduced penal sanctions, the same principles had later been applied to amendments that completely eliminated sanctions, like the amendments to section 11370.2, subdivision (a).  (*McKenzie*, *supra*, 9 Cal.5th at p. 45.)  *McKenzie* emphasized that, with respect to retroactivity, "'[t]he key date is the date of final judgment.  If the amendatory statute lessening punishment becomes effective prior to the date the judgment of conviction becomes final then . . . it, and not the old statute in effect when the prohibited act was committed, applies.'"  (*Id.* at p. 44, citing *Estrada*, *supra*, 63 Cal.2d at p. 744.)

The Supreme Court concluded that "when the revisions to section 11370.2 took effect, [McKenzie's] '"criminal proceeding . . . ha[d] not yet reached final disposition in the highest court authorized to review it."'  [Citations.]  On that date, 'the time for petitioning for a writ of certiorari in the United States Supreme Court [had not] passed' [citation]; as earlier set forth, the Governor signed the bill containing the revisions before [McKenzie] even petitioned *this* court for review of the judgment imposing a prison sentence, and when the bill took effect on January 1, 2018, [McKenzie]'s

appeal of his sentence was pending in the Court of Appeal pursuant to our December 2017 order granting review and remanding the case for reconsideration in light of the revisions.  Thus, the prosecution had not been 'reduced to final judgment at the time' the revisions took effect. (*Estrada*, *supra*, 63 Cal.2d at p. 746.)"  (*McKenzie*, *supra*, 9 Cal.5th at p. 45.)

The *McKenzie* court rejected the People's argument that the order granting probation was a final judgment and the "relevant cut-off point under *Estrada* for applying ameliorative amendments is the date the 'judgment of conviction becomes final.'  (*Estrada*, *supra*, 63 Cal.2d at p. 744.)"  (*McKenzie*, *supra*, 9 Cal.5th at p. 46.)  The People's argument was based on Penal Code 1237, subdivision (a)'s provision that "a defendant may appeal 'from a final judgment of conviction' and that 'an order granting probation . . . shall be deemed to be a final judgment within the meaning of this section.'"  (*Ibid*.)  The court explained, "the People err by assuming that when we used the phrase 'judgment of conviction' in *Estrada*, *supra*, 63 Cal.2d at page 744, we were referring only to 'underlying' convictions and enhancement findings, exclusive of sentence.  In criminal actions, the terms 'judgment' and '"sentence"' are generally considered 'synonymous' [citation], and there is no 'judgment of conviction' without a sentence [citation]."  (*McKenzie*, *supra*, at p. 46.)  Under *Estrada*, ameliorative amendments apply "in '"any [criminal] *proceeding* [that], at the time of the supervening legislation, has not yet reached final disposition

10

in the highest court authorized to review it.""" (*McKenzie*, *supra*, at p. 46, quoting *People v. Rossi* (1976) 18 Cal.3d 295, 304.)

The Supreme Court emphasized that its conclusion in *McKenzie* was consistent with its prior opinion in *People v. Chavez* (2018) 4 Cal.5th 771 (*Chavez*). (*McKenzie*, *supra*, 9 Cal.5th at p. 46.) In *Chavez*, the defendant requested that the trial court dismiss his case pursuant to Penal Code section 1385 and expunge his record. (*McKenzie*, *supra*, at p. 46.) The court denied the request because Chavez's probation had ended four years prior, and there was no longer a case to dismiss. (*Ibid*.) "In the course of so holding, [the Supreme Court] noted that '[u]nder well-established case law, a court may exercise its dismissal power under [Penal Code] section 1385 at any time before judgment is pronounced—but not after judgment is final.' (*Chavez*, *supra*, 4 Cal.5th at p. 777.) At the same time, however, we expressly rejected the argument that in such cases, the 'criminal action terminates' when 'the court orders a grant of probation.' (*Id*. at p. 785.) We therefore concluded that Penal Code section 1385's dismissal 'power may be exercised until judgment is pronounced or when the power to pronounce judgment runs out.' (*Chavez*, at p. 777.) As particularly relevant here, we explained that the 'criminal action'—and thus the trial court's jurisdiction to impose a final judgment—'continues into and throughout the period of probation' and expires only 'when th[e] [probation] period ends.' (*Id*. at p. 784.)" (*McKenzie*, *supra*, at pp. 46–47.)

11

The Supreme Court was not "persuaded by the People's argument that probationers who do not file a timely appeal from an order granting probation 'cannot challenge the order or the underlying determination of guilt through a later appeal.'" (*McKenzie*, *supra*, 9 Cal.5th at p. 50.) The court explained: "The legal principle associated with this argument provides that when a court suspends imposition of sentence and grants probation, the defendant's failure to appeal from the order granting probation generally 'estops' the defendant 'from claiming error *with respect to matters occurring before that order*,' but not as to 'proceedings in connection with the revocation of probation and sentencing.' [Citation.] In other words, it 'merely forecloses action based on errors committed at the trial.' [Citation.] Here, defendant does not claim that an 'error[ ]' occurred 'at the trial' [citation] 'before' the court ordered probation [citation]. Instead, he raises an issue relating to the subsequent 'revocation of probation and sentencing' [citation], based on an event—the amendment of section 11370.2—that occurred long after the court ordered probation *and* the time for direct appeal lapsed. Thus, defendant *could not* have raised this issue during a direct appeal from the probation order. Under these circumstances, defendant's failure to file such a direct appeal does not preclude him from taking advantage of ameliorative amendments that took effect while he was appealing from the subsequent revocation of his probation and imposition of sentence. [Citation.]" (*McKenzie*, *supra*, 9 Cal.5th at p. 50.)

12

## Analysis

The People argue that Glavish's case is readily distinguishable from *McKenzie*, because in *McKenzie* the trial court stayed imposition of sentence, whereas here, sentence was imposed, and execution was suspended. The People argue that in McKenzie's case, there was no judgment because no sentence had been imposed. In contrast, "[w]here[, as here,] a sentence has actually been imposed but its execution suspended, [t]he revocation of the suspension of execution of the judgment brings the former judgment into full force and effect. If a trial court previously had imposed sentence, it must order that exact sentence into effect.' [Citation.]" The People reason that where a sentence has been imposed, there is a judgment of conviction, which bars a defendant from seeking the benefits of a later-enacted ameliorative statute. Because Glavish failed to appeal the order granting probation in 2015, the case became final 60 days later,[3] and was not pending when Senate Bills 180 and 136 became effective.

Recently, our colleagues in the Sixth Appellate District, addressed this very issue in a case involving the retroactive applicability of Senate Bill No. 620 (Reg. Sess. 2017–2018)

_____

[3] A defendant must file a notice of appeal from a probation order within 60 days of the order. (*People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1420–1421; see Cal. Rules of Court, rule 8.308(a).)

13

(Senate Bill 620),[4] and held that the logic of *McKenzie* applied in a case where the trial court had imposed sentence but suspended execution. (*People v. Contreraz* (2020) 53 Cal.App.5th 965, 970–971 (*Contreraz*).) The Sixth District observed the *McKenzie* court's heavy reliance on its opinion in *Chavez*, and looked to *Chavez* for guidance on the issue. It noted that, "[i]n reaching its decision, the California Supreme Court considered when a final judgment is pronounced in cases where a trial court grants probation. (*Chavez, supra,* 4 Cal.5th at p. 777.) The court explained that, '[g]oing as far back as *Stephens v. Toomey* (1959) 51 Cal.2d 864, we have explained that neither form[ ] of probation—suspension of the imposition of sentence or suspension of the execution of sentence—results in a final judgment.' (*Id.* at p. 781.) 'In a case where a court suspends imposition of sentence, it pronounces no judgment at all, and a defendant is placed on probation with "no judgment pending against [him or her]." [Citation.] In the case where the court suspends execution of sentence, the sentence constitutes "a judgment provisional or conditional in nature." [Citation.] The finality of the sentence "depends on the outcome of the probationary proceeding" and "is not a final judgment" at the imposition of sentence and order to

---

[4] Senate Bill 620 amended Penal Code sections 12022.5, subdivision (c) and 12022.53, subdivision (h) to permit a trial court to exercise its discretion to strike firearm enhancements imposed pursuant to Penal Code sections 12022.5 and 12022.53 in the interests of justice.

14

probation.' (*Ibid*.)  There is no final judgment in either of these situations because '[d]uring the probation period, the court retains the power to revoke probation and sentence the defendant to imprisonment' under sections 1203.2 and 1203.3.  (*Chavez*, *supra*, at p. 782.)  '[T]he court's power to punish the defendant, including by imposing imprisonment, continues during the period of probation.'  (*Ibid*.)" (*Contreraz*, *supra*, at p. 971.)

The Sixth District concluded that Contreraz was eligible for relief under Senate Bill 620.  It reasoned that "Contreraz was ordered to probation in September 2017, and Sen. Bill 160 took effect on January 1, 2018, 'after the court ordered probation *and* the time for direct appeal lapsed.' (*McKenzie*, *supra*, 9 Cal.5th at p. 50.)  Contreraz could not have argued on direct appeal that the trial court would, in the future, have the discretion to strike or dismiss the firearm enhancement imposed under section 12022.5." (*Contreraz*, *supra*, 53 Cal.App.5th at p. 971.)

In *People v. Diaz Martinez* (2020) 54 Cal.App.5th 885 (*Diaz Martinez*), our colleagues in Division Six of the Second District of the Court of Appeal recently held that the ameliorative benefits of Senate Bill 136 applied retroactively to an order revoking a sentence of mandatory supervision imposed as part of a split sentence under the Criminal Justice Realignment Act.  (*Id*. at p. 889.)  Likening mandatory supervision to a period of probation, the *Diaz Martinez* court stated "a split sentence consisting of a county jail term followed by a period of mandatory supervision does

15

not automatically become a final judgement of conviction for purposes of *Estrada* retroactivity when the time to appeal from the imposition of that sentence expires.  Where, as here, the trial court subsequently revokes supervision and the Legislature enacts an ameliorative statute prior to or during the pendency of an appeal from the revocation order, the defendant is entitled to seek relief under the new law." (*Id*. at p. 889.)  Relying on *Chavez*, the *Diaz Martinez* court rejected the People's effort to distinguish *McKenzie* as they do here:  "That *McKenzie* considered a case where imposition of sentence was suspended, while mandatory supervision involves suspension of the execution of sentence, does not change our conclusion."  (Id. at p. 893.)

We agree with the reasoning of our sister courts in *Contreraz* and *Diaz Martinez*.  It is notable that, although the Court of Appeal in *People v. McKenzie* (2018) 25 Cal.App.5th 1207, focused heavily on the differences between imposition of sentence and suspension of sentence, going so far as to comment that it would not hold that ameliorative amendments apply when the sentence is imposed (see *id*. at pp. 1213–1215), in affirming the Court of Appeal, the Supreme Court did not rely on this reasoning, but instead based its decision on the principles outlined in *Estrada* and *Chavez*.  *Chavez* explained that "the pendency of a criminal action continues into and throughout the period of probation—when the court may still punish the defendant—but expires when that period ends."  (*Chavez*, *supra*, 4 Cal.5th at p. 784.)  Glavish's period of probation ended with

16

the trial court's revocation order, which he timely appealed. During the time his appeal was pending, Senate Bills 180 and 136 came into effect. Under the reasoning of *Chavez*, Glavish's case was not yet final when Senate Bills 180 and 136 became effective. He is therefore entitled to relief.

Finally, the People argue that *People v. Scott* (2014) 58 Cal.4th 1415 (*Scott*), supports the position that Glavish's case was final in 2015. In *Scott*, the Supreme Court held that the defendant was ineligible for jail under the Criminal Justice Realignment Act (the Act) because he had been "sentenced" at the time that sentence was imposed. (*Id.* at p. 1423.) We do not believe that *Scott's* holding, which defines what "sentenced" means in the context of the Act, defines when an ameliorative amendment "constitutionally could apply." (*Diaz Martinez*, *supra*, 54 Cal.App.5th at p. 894 ["the issue in *Scott* was *when* the defendant was sentenced for purposes of the Realignment Act—i.e., when the sentence was originally imposed and suspended, or when the court lifted the suspension and ordered the sentence to be executed—not when that sentence became *final*"].)

We conclude that the three-year section 11370.2, subdivision (a) enhancement and the three 1-year prior prison term enhancements under Penal Code section 667.5, subdivision (b) are no longer authorized sentences.

### *Custody Credits*

On appeal, Glavish contended that he was entitled to between 4 and 57 additional custody and conduct credits. The minute order dated September 11, 2015, reflected that Glavish was remanded to county jail on that date, and the minute order dated September 14, 2017, reflected that he was to be conditionally released to a representative of Recovery Network Resources for the purposes of being transported to that program on that date. We therefore concluded that Glavish was entitled to an additional four custody credits and four conduct credits.[5] We ordered the judgment modified and the abstract of judgment amended accordingly. We concluded that the record was insufficient to permit us to make a determination regarding Glavish's custody status between September 15, 2015, and November 6, 2015.

Following transfer back, the issue of actual custody credit is moot. "When, as here, an appellate remand results in modification of a felony sentence during the term of imprisonment, the trial court must calculate the *actual* time the defendant has already served and credit that time against the 'subsequent sentence.' (§ 2900.1.)" (*People v. Buckhalter* (2001) 26 Cal.4th 20, 23 (*Buckhalter*).)

---

[5] Conduct or "good time" credits are accrued at a rate of two days for every two days of actual custody. (*People v. Chilelli* (2014) 225 Cal.App.4th 581, 588.)

In contrast, the trial court does not normally recalculate conduct credits at resentencing, because a defendant may earn additional conduct credits "only under the so-called worktime system separately applicable to convicted felons serving their sentences in prison. (§§ 2930 et seq., 2933.)" (*Buckhalter*, *supra*, 26 Cal.4th at p. 23.) However, because the record demonstrates that Glavish is entitled to four additional days of conduct credit for time served between September 11, 2015, and September 14, 2015, the trial court's judgment following resentencing should so reflect.

With respect to any credit earned between September 15, 2015, and November 6, 2015, the record before us is insufficient to make a determination. The parties remain free to litigate any credit issue, if they so choose, in the trial court. (See *People v. Kennedy* (2012) 209 Cal.App.4th 385, 394; *People v. Fares* (1993) 16 Cal.App.4th 954, 958; *People v. Hyde* (1975) 49 Cal.App.3d 97, 102; see also Pen. Code, § 1237.1.)

## DISPOSITION

The sentence is vacated and the matter remanded to the trial court for resentencing with the following considerations: (1) the three-year section 11370.2, subdivision (a) enhancement and the three 1-year prior prison term enhancements under Penal Code section 667.5, subdivision (b) are no longer authorized sentences; and (2) the number of conduct credits must be increased by an additional four days. In all other respects, the judgment of conviction is affirmed. The court is directed to forward certified copies of the amended sentencing orders and abstract of judgment to the appropriate entities.

MOOR, J.

We concur:

BAKER, Acting P. J.

KIM, J.